372 So.2d 1024 (1979)
STATE of Louisiana
v.
Gerald HATCHER.
No. 62767.
Supreme Court of Louisiana.
January 29, 1979.
On Rehearing June 25, 1979.
*1026 John M. Standridge, Louis A. Heyd, Jr., Miriam G. Waltzer, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.[*]
Gerald Hatcher was charged in the same information in separate counts with forcible rape in violation of La.R.S. 14:43.1 and aggravated crime against nature in violation of La.R.S. 14:89.1. After trial by jury, he was found guilty of aggravated crime against nature and sentenced to serve ten years at hard labor. The jury was unable to agree on a verdict as to the charge of forcible rape. On appeal, defendant relies on fifteen assignments of error for reversal of his conviction and sentence.[1]

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in allowing the state to introduce hearsay evidence at the hearing on the state's notice of intent to introduce similar acts of defendant to prove system, knowledge or intent. He argues that the introduction of such hearsay evidence deprived him of the right to cross-examine the victims of the alleged prior offenses.
At the pretrial hearing on the state's notice of intent to introduce similar acts of defendant to prove system, knowledge or intent, an assistant district attorney testified, over defendant's objection on the ground of hearsay, as to interviews he had conducted with the victims of the three prior offenses and the victim of the offense forming the basis of the instant prosecution. He recited in detail the facts and circumstances of the offenses as described to him by the victims during their interviews. He was cross-examined by defendant. The testimony of the assistant district attorney was the only evidence adduced at the hearing. The trial judge, finding that the offenses exhibited identical modus operandi, ruled the evidence of the other crimes admissible.
*1027 As a prerequisite to the admissibility of evidence of other crimes, the state must within a reasonable time before trial furnish in writing to defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. State v. Prieur, 277 So.2d 126 (La. 1973). The state must also make a showing that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting defendant's bad character or his propensity for bad behavior, and that it serves the actual purpose for which it is offered. State v. Prieur, supra. However, a pretrial evidentiary hearing as to whether extraneous other-crime evidence may be admissible is not required. State v. Lukefahr, 363 So.2d 661 (La.1978).
Clearly, the evidence offered by the state at the pretrial Prieur hearing was hearsay. However, we are satisfied that the testimony of the assistant district attorney adequately informed defendant of the nature and factual content of the other-crime evidence sought to be introduced by the state. Moreover, the testimony of the victims of the prior offenses at trial conforms substantially to the details of the offenses as described by the assistant district attorney. Additionally, this testimony afforded the trial judge a sufficient basis from which he could rule on the admissibility of the other-crime evidence. Accordingly, we are unable to say that the trial judge erred in overruling defendant's objection to the testimony of the assistant district attorney at this pretrial Prieur hearing.
Assignment of Error No. 1 is without merit.

ASSIGNMENTS OF ERROR NOS. 2, 5 AND 14
Defendant contends the trial judge erred in overruling his objections to the state's introduction of evidence of other crime allegedly committed by defendant (Assignments of Error Nos. 2 and 5) and in denying him motion for a new trial grounded on the contention that, even if the evidence of other crimes was relevant to prove forcible rape, it was irrelevant to prove aggravated crime against nature, thereby causing prejudice to defendant (Assignment of Error No. 14).
In order for evidence of similar acts committed by defendant to be admissible under La.R.S. 15:445 and 446,[2] the other crimes must first be so distinctively similar as to preponderantly demonstrate that their perpetrator must be the same person. State v. Mitchell, 356 So.2d 974 (La.1978); State v. Jackson, 352 So.2d 195 (La.1977); State v. Slayton, 338 So.2d 694 (La.1976). The proof of the other crimes must be relevant to prove a fact of consequence to the accused's present innocence or guilt (independent of the inadmissible purpose to infer that the accused committed the present crime because he had committed the other one). State v. Mitchell, supra; State v. Frederick, 340 So.2d 1353 (La.1976). Finally, the probative value of the evidence of the other crimes must outweigh any prejudicial effect. State v. Jackson, supra; State v. Moore, 278 So.2d 781 (La.1973) (on rehearing).
At trial, X, a victim of the crimes charged, testified that as she was walking home from school on August 30, 1976, she was approached by defendant who asked her name and age (she was fourteen years old at the time) and whether she would be *1028 interested in being in the movies. Defendant informed her that he was a talent scout looking for people to be in movies that were being made in New Orleans. He showed her a newspaper containing a photograph of himself talking to a local disc jockey and an application form to be filled out by those interested in obtaining parts in movies. X indicated that she was interested. He then convinced her to go with him in his car to his aunt's house. No one was in the house when they arrived. Defendant handed X an application form for her inspection as well as a pad on which he told her to write certain information. Although defendant knew she was fourteen years old at the time, he instructed her to write down that she was twenty, explaining that this would help her get the job. Thereafter, defendant ordered X to remove her clothes and lie on the bed in a certain position in the nude. When she refused, he threatened her with physical violence. As a result, she complied with his instructions. Defendant then produced a camera and ordered her to smile while he photographed her. After the photographs were taken, defendant raped her and forced her to perform an act of fellatio upon him. The victim maintained that she was constantly threatened with physical violence if she refused to comply with defendant's demands.
After X's testimony, the victims of three prior forcible rapes or aggravated crimes against nature allegedly perpetrated by defendant testified. This testimony reveals that these prior offenses and the attack upon X occurred within a three-month period of time. All of the victims were teenagers and were attacked in the same general area of New Orleans. Defendant told each victim that he was a talent scout for the movies and that he was going to assist them in obtaining a part in the movies. To substantiate this claim, he showed each victim a newspaper containing a photograph of himself talking to a local disc jockey. Each victim was taken to a secluded place and, by use of force and threats, forced to remove her clothes. Defendant photographed each victim and instructed each to smile while the photographs were being taken. All of the victims were either raped by defendant or forced to perform an act of fellatio upon him. Each victim maintained that defendant constantly employed acts of physical violence and threats during the occurrences.
The evidence of other crimes introduced by the state described in clear and simple terms occurrences extraordinarily similar in nature to the incident forming the basis of the instant prosecution. We consider that the modus operandi of all the described offenses is so peculiarly distinctive that one must logically say that they are the work of the same person, i. e., they are "signature crimes."
Next, we must determine whether the evidence of the other crimes is relevant to prove a fact of consequence to defendant's innocence or guilt.
Forcible rape is defined as
sexual intercourse without the lawful consent of the victim where the victim is prevented from resisting the act by force or threats of physical violence wherein the victim reasonably believes such resistance would be useless.
La.R.S. 14:43.1. Defendant testified that he knew all of the victims of the alleged forcible rapes or aggravated crimes against nature. He also stated that he had had sexual intercourse with each of the victims but maintained that all had freely and voluntarily given their consent (defendant denied that fellatio was performed with any of the victims) and that no force or threats of physical violence was ever employed by him. Defendant also offered testimony of witnesses who indicated that several of the victims were seen in public places with defendant and appeared friendly and relaxed with him.
Clearly, the testimony offered by defendant sought to contradict the proof offered by the state that sexual intercourse in the instant case had occurred without the lawful consent of the victim where the victim was prevented from resisting the act by force or threats of physical violence wherein the victim reasonably believed that such *1029 resistance would be useless. The use of force or threats of physical violence is an essential element of the crime of forcible rape. The evidence of other crimes introduced by the state relative to the force used by defendant in the prior acts strengthens the testimony of the victim in the instant case on that issue. Hence, the evidence of the prior offenses was relevant to prove facts of consequence (use of force) to defendant's guilt or innocence of the crime of forcible rape in the instant case. State v. Mitchell, supra; see also State v. Cass, 356 So.2d 936 (La.1977).
In addition, we believe the probative value of the evidence of other crimes relating to the use of force in the instant case clearly outweighs any prejudicial effect. Hence, the evidence offered by the state relating to prior offenses committed by defendant was admissible as similar acts pursuant to La. R.S. 15:445 and 446. Accordingly, the trial judge did not err in overruling defendant's objections to the introduction of such evidence.
Finally, in his motion for a new trial, defendant argues that, even if the evidence of other crimes was relevant to prove forcible rape, it was irrelevant to prove aggravated crime against nature, thereby causing prejudice to defendant.
This contention should have properly been raised in a motion for severance of offenses brought either before trial or during the trial. See La.Code Crim.P. art. 495.1. As defendant did not bring the requisite motion for severance, we consider this contention to have been waived. Cf. State v. Mallett, 357 So.2d 1105 (La.1978).
Assignments of Error Nos. 2, 5 and 14 are without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial judge erred in finding the state's answers to his motion for a bill of particulars sufficient. He argues that he was not adequately informed of the location of the other crimes that he allegedly committed.
Prior to trial, defendant filed a motion for a bill of particulars requesting, inter alia, information as to the time and place defendant allegedly committed the prior offenses. In answer to defendant's motion for a bill of particulars, the state provided the dates and times of the prior offenses and indicated the locations of the three prior offenses as: "Uptown by the river," "around Annunciation-Bridge," and "Terpsichore." At a pretrial hearing on the bill of particulars, defendant expressed dissatisfaction with the specificity of the locations provided in the state's answers. The state, in response, indicated that the victims of the prior offenses were unable to provide a more exact description of the locations of the prior offenses. The trial judge ruled the state's answers designating the general locations of the prior offenses sufficient. Defendant objected to this ruling.
In State v. Prieur, 277 So.2d 126 (La.1973), this court held that, as a prerequisite to the admission of evidence of other crimes, the state must within a reasonable time before trial furnish in writing to defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. The place of the commission of the offense need not be alleged in the indictment or information unless the place of commission is essential to the offense. La.Code Crim.P. art. 469; State v. Hamilton, 307 So.2d 329 (La.1975).
The place of commission of the offense is not an essential element of the crimes of forcible rape or aggravated crime against nature. See La.Code Crim.P. art. 469, Official Revision Comment (c). Hence, a designation of the general location of the prior offenses does not constitute insufficient compliance with the guidelines established in State v. Prieur, supra. See State v. Flowers, 337 So.2d 469 (La.1976). Moreover, the victims of the prior offenses were unable to recall the exact locations of the prior offenses and their testimony at trial corresponded to the locations provided by the state in its answers. It is thus apparent that the state did not withhold this information *1030 from defendant and then introduce it at trial to defendant's surprise; rather, the state supplied defendant with all available information concerning the place of commission of the prior offenses. See State v. Cramer, 358 So.2d 1277 (La.1978). Defendant was able to adequately prepare his defense with the information supplied him. Accordingly the trial judge did not err in finding the state's answers as to locations of the prior offenses sufficient.
Assignment of Error No. 3 is without merit.

ASSIGNMENTS OF ERROR NOS. 7 AND 8
Defendant contends the trial judge erred in denying his motions for a mistrial grounded on the state's introduction of evidence of other crimes not mentioned in the Prieur notice.
At trial, Y, victim of a prior offense allegedly committed by defendant, testified that on July 10, 1976, she met defendant who, during the course of a conversation, identified himself as a talent scout for the movies. Defendant showed her a newspaper containing a photograph of himself talking to a local disc jockey and asked her if she wanted to be in the movies. Thereafter, defendant induced her to accompany him to a secluded location and, by use of force and threats of violence, ordered her to remove her clothing and pose for nude photographs. Defendant then forced her to perform an act of fellatio upon him. Y further testified that the next day she again encountered defendant who, by use of force and threats of violence, forced her to have sexual intercourse with him. Defendant moved for a mistrial, contending that Y's testimony related to evidence of another crime not mentioned in the Prieur notice, I. e., that Y was forced to have sexual intercourse with defendant on a date after that indicated in the Prieur notice. The trial judge denied the motion (Assignment of Error No. 7).
The Prieur notice filed by the state prior to trial indicated the state's intent to introduce evidence that defendant took Y to a secluded location where "he forced her to pose for nude photographs, undergo sexual intercourse and perform an act of oral copulation upon the person of the defendant." It is thus apparent that the state's notice adequately informed defendant of the state's intent to produce evidence showing that defendant had forced Y to perform acts of sexual intercourse and fellatio. It is true that the notice gives no indication that the acts of sexual intercourse and fellatio occurred on separate days.[3] However, a review of the record convinces us that defendant suffered no prejudice from the introduction of evidence at trial establishing that the acts of fellatio and sexual intercourse occurred a day apart. Defendant fully cross-examined Y as to both offenses. We do not find that defendant was surprised or misled in any way by the evidence adduced at trial concerning the offenses allegedly committed by defendant against Y. Accordingly, the trial judge did not err in denying defendant's motion for a mistrial.
Z, another victim of a prior offense allegedly committed by defendant, testified that defendant informed her that he was a talent scout for the movies and requested her name, address and telephone number. Thereafter, defendant telephoned her and requested that she accompany him to meet a movie producer. When she refused, defendant threatened to kill her little sister if *1031 she continued to refuse. At this point, defendant moved for a mistrial, contending that Z's testimony related to evidence of another crime not listed in the Prieur notice, I. e., threats made to Z to kill her sister. The trial judge denied the motion (Assignment of Error No. 8). Thereafter, Z testified that she accompanied defendant in his car to a secluded location where he forced her to remove her clothes and smile as he photographed her in the nude. He then forced her to have sexual intercourse with him and perform an act of fellatio upon him.
The Prieur notice filed by the state indicated its intent to introduce evidence showing that defendant took Z to a secluded location where "he forced the victim to pose for nude photographs, undergo sexual intercourse and perform an act of oral copulation."
We first note that Prieur notice is required only where the state intends to offer evidence of other offenses under the exceptions provided in La.R.S. 15:445 and 446. Here, the evidence of defendant's threat was not introduced for the purpose of any of these exceptions. Rather, the evidence was part of the proof necessary to establish that defendant used force or threats of physical violence to compel Z to have sexual intercourse with him and perform an act of fellatio upon him. Hence, it was a part of that offense and consequently, no Prieur notice was required. See State v. McDaniel, 336 So.2d 841 (La.1976).
Assignments of Error Nos. 7 and 8 are without merit.

ASSIGNMENTS OF ERROR NOS. 10 AND 11
Defendant contends the trial judge erred in overruling his objections to certain testimony of state witnesses grounded on the claim that the testimony was hearsay.
The sister of the victim of the instant prosecution testified that, after the occurrence of the crimes charged, the victim came to her home crying and told her that a man had done something to her. When she asked her what had happened, defendant objected on the ground of hearsay. The objection was overruled (Assignment of Error No. 11). The sister then testified that the victim told her that a man had attacked her.
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court assertor. State v. Drew, 360 So.2d 500 (La.1978); State v. King, 355 So.2d 1305 (La.1978). Hearsay evidence is inadmissible except under one of the statutory or well-recognized exceptions. La.R.S. 15:434.
This court has consistently recognized an exception to the hearsay rule allowing admission of the early complaints of rape victims. State v. Elzie, 351 So.2d 1174 (La. 1977); State v. Brown, 302 So.2d 290 (La. 1974); State v. Pace, 301 So.2d 323 (La. 1974). When there is no unexplained lapse of time between the rape and the victim's complaint, and when the utterance is spontaneous, the person to whom the complaint was made is allowed to repeat the complaint in court. State v. Elzie, supra.
The record herein reflects that, after the alleged incident, the victim (age fourteen) rode a bus home, took a bath, and lay down on her mother's bed for a short period of time. Her mother testified that the victim appeared noticeably upset, but would not respond to the mother's inquiries. Thereafter, the victim immediately went next door to her sister's home. Her sister testified that, when the victim arrived at her house, she was upset and crying. The testimony of the victim and the sister indicates that approximately one-half to one hour elapsed from the time the victim first arrived home until she informed her sister of the incident.
We are convinced that the complaint of this fourteen-year-old victim of sex offenses to her sister was spontaneous and made under the immediate pressure of the occurrence. Under these circumstances, the sister's *1032 testimony as to the victim's statement was properly admitted into evidence.
A second sister of the victim testified that, after learning what had happened to her sister, she drove off on her bicycle in search of defendant. She stated that initially she went to the wrong location, but when her sister told her "where it happened," she found defendant. Defendant objected on the ground of hearsay. The trial judge overruled the objection (Assignment of Error No. 10). The witness then testified that she returned home and reported defendant's description to the police.
A well-known rule is that evidence is non-hearsay which is offered not to prove the truth of the facts recited, but to prove that the utterance occurred. State v. Drew, supra; State v. Mitchell, 356 So.2d 974 (La.1978); State v. Cass, 356 So.2d 936 (La.1977); State v. Williams, 341 So.2d 370 (La.1976); State v. Monk, 315 So.2d 727 (La.1975). The statement of the victim's sister was not hearsay because, although it related to what another person told her, it was not offered to prove the truth of the facts recited but rather that the utterance occurred, demonstrating how she was able to locate defendant. Hence, the trial judge did not err in overruling defendant's objection.
Assignments of Error Nos. 10 and 11 are without merit.

ASSIGNMENT OF ERROR NO. 12
Defendant contends the trial judge erred in sustaining the state's objection to testimony defendant sought to elicit from a defense witness.
Theresa Watson was called as a defense witness. Ms. Watson testified that she had previously met defendant who told her that he was a talent scout for the movies. At this point, the state objected to any further testimony, contending that it was irrelevant. Defendant then indicated that Ms. Watson would testify that, in addition to informing her that he was a talent scout, defendant instructed her to write down some information on a pad, and Ms. Watson falsified her age in order to impress defendant. Defendant also indicated that she would testify that she voluntarily allowed defendant to photograph her in the nude. Defendant argued that such testimony was relevant as to the state's use of other-crime evidence. The trial judge sustained the state's objection.
La.R.S. 15:441 provides:
Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible.
This court has consistently held that the trial judge is vested with wide discretion in determining the relevancy of evidence and his ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. State v. Drew, 360 So.2d 500 (La.1978); State v. King, 355 So.2d 1305 (La.1978); State v. Russell, 352 So.2d 1289 (La.1977); State v. George, 346 So.2d 694 (La.1977). We are satisfied that neither defendant's commission of the offenses in question nor the requisite intent would have been negatived by testimony as to what occurred between defendant and Ms. Watson. See State v. Shuff, 198 La. 67, 3 So.2d 278 (1941). Accordingly, the trial judge did not abuse his discretion in sustaining the state's objection to Ms. Watson's testimony on the ground that it was irrelevant.
Assignment of Error No. 12 is without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
DIXON and CALOGERO, JJ., dissent.
DIXON, Justice (dissenting).
I respectfully dissent.
If the testimony of X Y and Z is relevant to prove the victim did not consent, I do not *1033 understand why the testimony of Watson was not relevant to show that it was not defendant's practice to force compliance.

ON REHEARING
DENNIS, Justice.
A rehearing was granted to reconsider defendant's assertion that the trial court erred in allowing the introduction of other crimes evidence by the prosecution and in excluding evidence offered in rebuttal by the defendant. We reject the defendant's contentions a second time but for reasons different from those originally given.
The defendant, Gerald Hatcher, was convicted by a jury of aggravated crime against nature, La.R.S. 14:89.1, and sentenced to ten years imprisonment at hard labor. In the same trial the jury was unable to reach a verdict on a separate charge of forcible rape arising from the same incident. The complainant, a girl in her early teens, testified that Hatcher forced her to perform fellatio and other sexual acts. Over the defendant's objection the prosecution was allowed to introduce the testimony of three other female teenagers, each of whom claimed that Hatcher forced her to perform fellatio within three months of the charged offense. When the defendant proffered the testimony of a female witness in rebuttal, however, the court sustained a prosecution objection and excluded her testimony.
With respect to the exclusion of defendant's evidence, we conclude that the trial court did not err because the evidence, as proffered, was irrelevant. According to the proffer by defendant's trial counsel, who did not appear in this Court, the witness would have testified only that Hatcher represented himself to her as a talent scout, that she prepared a written employment application in which she falsified her age, and that she voluntarily allowed him to photograph her in the nude. Thus, the defense witness's testimony would not have tended to rebut the testimony of the prosecution's witnesses who claimed that the defendant had forcibly raped them and required them to perform fellatio. We recognize the possibility that the proffer may have been incomplete. The witness in fact may have been prepared to testify to additional facts which could have been relevant. However, the proffer did not contain any relevant facts, and the trial judge did not abuse his discretion by excluding the proposed evidence as it was presented to him.
This Court has held to be admissible, for limited purposes, proof of other crimes exhibiting almost the identical modus operandi or system, committed in close proximity in time and place. State v. Jackson, 352 So.2d 195 (La.1977); State v. Jones, 332 So.2d 466 (La.1976); State v. Price, 325 So.2d 780 (La.1976); State v. Vince, 305 So.2d 916 (La.1974); State v. Lawrence, 294 So.2d 476 (La.1974).
In order to be admissible the extraneous offense evidence must meet several tests:
(1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith; State v. Prieur, 277 So.2d 126 (La.1973); see also, State v. Gaines, 340 So.2d 1294, 1298 (La.1977) (concurring opinion); McCormick on Evidence, § 190, pp. 451-52 (2d ed. 1972);
(2) the modus operandi employed by the defendant in both the charged and the uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; State v. Jackson, 352 So.2d 195 (La.1977); State v. Lee, 340 So.2d 1339, 1345 (La.1977) (concurring opinion); (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character. State v. Frederick, 340 So.2d 1353 (La.1976); (4) the other crimes evidence must tend to prove a material fact genuinely at issue; State v. Ledet, 345 So.2d 474 (La.1977); (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect. State v. Sutfield, 354 So.2d 1334 (La.1978); State v. Jackson, 352 So.2d 195 (La.1977).
In the instant case the extraneous offenses evidence clearly meets the first two *1034 tests. The evidence of the commission of the extraneous crimes and defendant's connection therewith was clear and convincing. The modus operandi employed by the defendant in both the charged and extraneous offenses were so peculiarly distinctive that one must logically say they are the work of the same person. See, State v. Lee, 340 So.2d 1339, 1345 (La.1977) (concurring opinion). In each instance a young teenage female victim was forced to perform fellatio after being lured into a bedroom or a car by the defendant who posed as a talent scout searching for potential movie actresses. Prior to each offense the victim was shown a newspaper clipping depicting Hatcher talking with a local disc jockey; asked to fill out an application for movie employment; urged to misstate her age on the application; and photographed in the nude. All of the extraneous offenses occurred within three months of the charged offense and in the same vicinity of the city of New Orleans.
Our initial impression in granting rehearing was that the other crimes evidence failed to meet the other tests. Indeed, if the defendant had been prosecuted only on the forcible rape charge and convicted, the introduction of the other crimes evidence more than likely would have constituted reversible error.[1] However, since the defendant was not convicted of forcible rape or a lesser included offense, any prejudice he may have sustained in his defense to that prosecution is inconsequential to our present review.
When we view the case solely as a prosecution for aggravated crime against nature we conclude that the other crimes evidence meets all of the remaining tests for admissibility set forth above.
Although the defendant admitted having coitus with the complainant, he consistently denied that fellatio occurred. Other than the complainant's testimony there was no evidence which tended to establish this essential fact. Thus, the question of whether the act of fellatio happened was a material fact genuinely at issue. Accordingly, the other crimes evidence was relevant for some other purpose than to show a probability that Hatcher committed the crime on trial because he is a man of criminal character who has a propensity for this type of offense. The evidence was also relevant to prove that the defendant had a design, plan, system or scheme directed toward forcing young women to perform fellatio, as manifested by his particularly distinctive modus operandi, and did carry it out in the instance on trial. We are fortified in this conclusion because the evidence also meets the test as articulated by text writers: in the instant case "the very doing of the act" was a genuine issue at trial and the charged and uncharged offenses were not merely similar; there was "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individualized manifestations." 2 Wigmore, Evidence, § 304 (3d ed. 1940). See also, Weinstein's Evidence, § 404[09] pp. 404-61.
*1035 It may be argued that proof of a design, plan, system or scheme is completely foreclosed except where continuity of the offense, knowledge or intent is a material issue in the case. La.R.S. 15:446 provides that "where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged." However, it appears more likely that the legislature intended to prohibit the introduction of evidence of a design or scheme in cases in which the evidence has no substantial relevance other than to demonstrate criminal propensity. Since the occurrence of a crime is not genuinely at issue in most prosecutions, evidence of design, plan, system or scheme usually will be inadmissible except to show knowledge and intent. But in the few cases in which the actual occurrence of crime is genuinely at issue, the design evidence has relevance independent of the defendant's propensity and should be admitted if it meets all of the other tests. In accord with general authority, Louisiana courts have admitted other crimes evidence for purposes other than those listed in the statutes. See, State v. Sutfield, 354 So.2d 1334 (La.1978).
For many of the same reasons that the evidence meets the first four tests, the trial judge was not clearly erroneous in his determination that the probative value of the other crimes evidence outweighed its prejudicial effect. It was not manifestly wrong to conclude that the likelihood that the jury would consider the evidence as tending to prove the very doing of the sexual act in question by virtue of inference from the existence of a general design or scheme manifested by peculiarly distinctive modus operandi was greater than the risk that the jury would short circuit the process and convict the defendant because of bad character or propensity toward crimes against nature.
Our opinion today is in some respects inconsistent with the language, but not the holdings, of State v. Frentz, 354 So.2d 1007 (La.1978); State v. Jackson, 352 So.2d 195 (La.1977); and State v. Ledet, 345 So.2d 474 (La.1977). Some of the statements in those opinions suggest that a defendant's design, scheme, plan or system may be relevant to prove identity or intent, when either is an issue in the case, but that it is never relevant to prove the very doing of the act charged. These statements were too broad in light of the well established principles set forth above. In an unusual case, such as the present one, in which the defendant causes the very doing of the act to become a genuine issue, his design, scheme, etc., may be relevant to that issue. Nevertheless, Frentz, Jackson, and Ledet were each decided correctly and remain solid precedent for the application of the basic principles undergirding the decisions.
In Frentz, this Court held that evidence of extraneous crimes of nature by the defendant were inadmissible. Although the charged and uncharged offenses were similar, they were not "so peculiarly distinctive that one must logically say that they are the work of the same person," State v. Lee, supra, and they lacked "such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." 2 Wigmore, Evidence, § 304 (3d ed. 1940). Although the differences between requiring similarity, for acts negativing innocent intent, and requiring common features indicating common design, for acts showing design, is a difference of degree rather than of kind, not always perceived by the courts, nevertheless the distinction is a real one. See, 2 Wigmore, Evidence, § 304, p. 204 (3d ed. 1940). Furthermore, the probative value of the other crimes evidence in Frentz was not nearly as great as that in the instant case and did not outweigh its prejudicial effect in that case.[2]
*1036 In State v. Jackson, supra, the other crimes evidence was inadmissible because the offenses were "no more peculiarly distinctive in nature than are any other street transactions" and "the evidence was unduly prejudicial, without overriding probative effect." 352 So.2d at 197. The offenses in State v. Ledet, supra, were "more noteworthy for their differences than for their similarities," 345 So.2d at 478, and there clearly was no distinctive design or plan of which the crimes were individual manifestations. Moreover, in Jackson and Ledet, "the very doing of the act" was not a genuine issue at trial.
Accordingly, our original decree is reaffirmed.
SUMMERS, C. J., and BLANCHE, J., concur.
TATE, J., concurs and assigns reasons.
MARCUS, J., concurs, adhering to reasons in original opinion.
DIXON and CALOGERO, JJ., dissent.
TATE, Justice, concurring.
I concur with the majority opinion. Because its holding may be misconstrued, I think it is important to note what the majority does not hold: Other-crime evidence may not be used to prove that the offender committed this crime, simply because he had committed similar crimes in the past. See especially footnote 1 of the present opinion.
However, in limited circumstances such as here presentwhere the accused concedes the operative facts (here, the sexual encounter with the victim), but denies that any crime occurredother-crime evidence may be admissible, if it meets the other tests, to prove the affirmatively disputed doing of the criminal act in the course of admitted conduct closely in nature approximating the crime.
In summary, where the defense is in the nature of a confession and avoidance, other-crime evidence may be admissible, insofar as it might tend to show that in fact the crime occurred, just as it did on past occasions when the admitted (but sought to explained as innocent) conduct of the accused had occurred.
Similarly, where an accused denies knowing that his check was written without knowledge that there was insufficient money in his account, repeated past incidents of this nature may be used to negate his innocent explanation of admitted conduct. So, also, where the accused admits his possession of a substance that he denies he knew was an illegal drug, then other-crime evidence may be used to negate this confession-avoidance defense. State v. Frederick, 340 So.2d 1353 (La.1976).
The chief danger of the majority opinion is that prosecutors may construe it too broadly, despite the majority's approval of the results in Frentz, Jackson, and Ledet, and the present opinion's merely limited refinement of the principles therein expressed in instances where an affirmative confession-and-avoidance defense is presented.
In the present case, for example (see footnote 1 of the majority opinion), prior rapes could not be used to negate an accused's claim of consent in this case, for they are not truly probative of consent or no-consent in this case and, moreover, their prejudicial effect far outweighs their probative value. Also, in the present case if the accused had admitted that he had brought the victim to his apartment, but had denied any sexual conduct whatsoever, then the other-crime evidence would not be admissiblefor its primary and substantial purport would be to prove that the accused had committed this crime, because he had committed other such crimes in the pasta traditionally prohibited use of other-crime *1037 evidenceand thus does not fall within the confession-avoidance exception as merely an accused's innocent explanation of conduct ambiguously, but not certainly, criminal.
The subtle difference, almost inarticulable, that permits admission of such evidence hereor at least constitutes no abuse of the trial court's discretion (although it is borderline)is that the accused admits the sexual encounter, but he denies certain aspects of it which could only be known by his victim and himself, under circumstances where this sexual encounter between strangers who had just met strongly suggests, but does not prove, sexual misconduct on the defendant's part. Under this limited confession-and-avoidance situation, I can see the reason for the rule permitting other-crime evidence, subject to its usual stringent limitations, to prove that a crime had in fact occurred, which the accused (while admitting the sexual conduct between the victim and himself) affirmatively denies.
With some reservations, and fully realizing that this attempt to articulate the reasons for the confession-and-avoidance exception is not wholly satisfactory, the writer concurs.
NOTES
[*] Chief Judge L. Julian Samuel participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Sanders, retired.
[1] Defendant has neither briefed nor argued Assignments of Error Nos. 4, 6, 9, 13 and 15. Hence, we consider them to have been abandoned. State v. Blanton, 325 So.2d 586 (La. 1976); State v. Carlisle, 315 So.2d 675 (La. 1975).
[2] La.R.S. 15:445 provides:

In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction.
La.R.S. 15:446 provides:
When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged.
[3] At the pretrial Prieur hearing, the assistant district attorney indicated that the acts of sexual intercourse and fellatio had occurred "somewhere around July 9, 1976." In answer to defendant's motion for a bill of particulars, the state indicated that the offenses had occurred on July 10, 1976. At trial, during cross-examination, Y admitted that she was uncertain as to the exact dates of the offenses. We note that State v. Prieur, 277 So.2d 126 (La. 1973) requires only that the state describe the prior acts or offenses with the general particularity required of an indictment or information. The date or times of the commission of the offenses need not be alleged in the indictment, unless the date or time is essential to the offense. La.Code Crim.P. art. 468. The date of the offense is not an essential element of either the crime of forcible rape or aggravated crime against nature.
[1] Upon reconsideration we acknowledge probable error in the analysis contained in our original opinion. Where the only issue in a prosecution for rape is that of consent, other offenses are usually held to be inadmissible. See, 2 Wigmore, Evidence (Supp.1977). See, e. g., Lovely v. United States, 169 F.2d 386 (4th Cir. 1948); State v. Beaulieu, 116 R.I. 575, 359 A.2d 689 (1976); Setzer v. State, 29 Md.App. 347, 348 A.2d 866 (1975); State v. Davis, 239 S.C. 280, 122 S.E.2d 633 (1961). The lack of consent by other victims is not probative of lack of consent by the complainant of the charged offense. Lovely v. United States, supra, at 390. Some courts admit other crimes evidence for this purpose. See, Fisher v. State, 57 Ala.App. 310, 328 So.2d 311, writ denied, 295 Ala. 401, 328 So.2d 321 (1976); People v. Oliphant, 399 Mich. 472, 250 N.W.2d 443 (1976); State v. Hampton, 215 Kan. 907, 529 P.2d 127 (1974); Williams v. State, 110 So.2d 654 (Fla.1959); but their reasons are not persuasive. Furthermore, in the instant case in which the accused employed an elaborately seductive design or scheme, the defendant's use of force as a final resort in committing the other crimes has little probative value to show that he was required to use force on the occasion in question. Nor was the other crimes evidence admissible to prove identity as in State v. Mitchell, 356 So.2d 974 (La.1978) because Hatcher's identity was never a genuine issue.
[2] In Frentz the prosecution introduced the testimony of two eyewitnesses, other than the victim, to the unnatural sex act, whereas in the instant case the complainant was the state's only witness who could dispute Hatcher's testimony. In the present case the probative nature of the state's other crimes evidence was further enhanced by the state's need to disprove Hatcher's persuasive story that the object of his design or scheme had been accomplished when he persuaded the complainant to consent to normal sexual intercourse. Frentz, on the other hand, despite the contrary testimony of two eyewitnesses, merely denied that any sexual conduct ever occurred.