620 So.2d 288 (1993)
STATE of Louisiana
v.
Charles CARR.
No. 92 KW 2026.
Court of Appeal of Louisiana, First Circuit.
May 28, 1993.
*289 Doug Moreau, Dist. Atty., Office of Dist. Atty., by Jim Murray, Asst. Dist. Atty., Baton Rouge, for the State.
Office of Public Defender, Baton Rouge, for defendant-appellant.
*290 Before WATKINS, CRAIN and GONZALES, JJ.
WATKINS, Judge.
Defendant, Charles Carr, was charged by grand jury indictment with the first degree murder of David Stigletts, a violation of LSA-R.S. 14:30. The State filed a Prieur notice requesting the introduction of other crimes evidence at the trial for the offense. After defendant entered a plea of not guilty to the charge, the state amended the indictment, reducing the charge to second degree murder, a violation of LSA-R.S. 14:30.1. Upon being rearraigned on the reduced charge, defendant pled not guilty. Thereafter, on September 30, 1992, the district court held a hearing on the state's Prieur request.[1] At the conclusion of the hearing, the district court took the matter under advisement; on the following day, the court granted the state's request to introduce the other crimes evidence. In an application for supervisory writs, defendant sought the reversal of the ruling granting that request. On November 12, 1992, we denied defendant's writ application. Defendant then applied for supervisory writs with the Louisiana Supreme Court. On December 21, 1992, the Louisiana Supreme Court granted the writ application and remanded the case to this court for briefing, argument, and an opinion. State v. Carr, 609 So.2d 243 (La.1992).
The only evidence presented by the state at the hearing was that of the prosecutor, Assistant District Attorney Aaron Brooks. Similarly, the sole evidence introduced by defendant at the hearing was that of defense counsel, Paul Knight.
Mr. Brooks testified that he had been assigned this case on the night the offense occurred and that he had interviewed numerous witnesses. Mr. Brooks' testimony recounted information he had obtained from the following named witnesses: Albert Poole, Cassandra Heard, Donald Davis, Sheronda Davis, Rita Selders, and Keesha Clark.
Mr. Brooks indicated that, from his interviews of these named witnesses, he learned about the system defendant used in the charged offense, i.e., that defendant would fake the selling of narcotics in the North Ardenwood Project Area and more specifically at 1967 North Ardenwood. Mr. Brooks stated that "[i]ndividuals, transients, would come into that area; and, on the night in question, David Stigletts was such an individual." While faking a cocaine transaction, defendant would rob the transients of their money at gunpoint. The foregoing system was used on the night Stigletts was shot.
Mr. Brooks testified that, based on his interviews with the witnesses, he limited the Prieur request to admit other crimes evidence of three acts, all of which occurred within a period of one month of the charged offense. A summary of Mr. Brooks' testimony regarding each of these acts follows.
The first incident involved three black females who entered the project.[2] They arrived there in a small car and were allegedly seeking cocaine. Defendant confronted them at 1967 North Ardenwood, waved a gun, and harassed them. None of them was an occupant of the complex; rather, all three were transients. When defendant could not provide cocaine, the females attempted to leave. Although defendant fired numerous shots at the car, trying to hit the tires, the car successfully left.
The second incident involved another transient, a girl, who entered the project.[3] Mr. Brooks stated that he did not know if the girl was seeking cocaine or what was the girl's purpose in going to the location. Defendant robbed the girl of $200.00 at 1967 North Ardenwood, and a gun was involved in the incident.
*291 The third incident involved a man, also a transient, who entered the project seeking cocaine.[4] Although the man gave defendant $20.00, defendant did not give the man the cocaine. Instead, defendant pulled out a handgun and started shooting bullets at the man's feet, yelling at him to dance. The man had to leave the complex without receiving the cocaine for which he had paid.
Paul Knight testified that he spoke to Sergeant Devinney and Detective Frank Caruso as to whether or not they had ever encountered the scenario of someone's setting up a street level drug deal to lure another individual into a dark place where the supposed dealer pulled out a gun and "rip[ped] the individual off." Mr. Knight testified that both officers stated that they had encountered that scenario and that it occurs everyday.
In his writ application averring that the district court erred by granting the state's request to introduce evidence of the three other crimes, defendant essentially makes three arguments. First, citing the confidentiality provisions of the Louisiana Children's Code, he argues that the "other crimes" are unadjudicated delinquent acts (because they were committed by a juvenile); that the state, absent a compelling reason, should not be able to introduce evidence of those acts, and thereby circumvent the confidentiality provisions. Second, defendant asserts that, even assuming that the unadjudicated acts are admissible under State v. Prieur, 277 So.2d 126 (La. 1973), the Prieur notice given by the state was inadequate. Third, defendant argues that the state failed to present clear and convincing evidence that defendant committed the other crimes.
As a prerequisite to the admissibility of evidence of other crimes, the state must, within a reasonable time before trial, furnish in writing to the defendant a statement of the acts or offenses it intends to offer, describing same with the general particularity of an indictment or information. State v. Hatcher, 372 So.2d 1024, 1027 (La.1979); State v. Prieur, 277 So.2d at 130.
The case of State v. Moore, 440 So.2d 134, 137 (La.1983) deals with of evidence of other crimes having almost the identical modus operandi or system and committed in close proximity in time and place. The court sets forth guidelines for determining the admissibility of evidence of other crimes. First, there must be clear and convincing evidence that the defendant committed the other crimes. "Clear and convincing evidence" is less than "beyond a reasonable doubt" but more than a "preponderance of the evidence." State v. Johnson, 458 So.2d 937, 941-942 (La.App. 1st Cir.1984), writ denied, 463 So.2d 593 (La.1985). Second, the other crimes evidence must be substantially relevant for some other purpose than to show the defendant's general criminal character. Third, the other crimes evidence must tend to prove a material fact genuinely at issue. Fourth, the method of commission of both the charged and the uncharged crime must be so distinctly similar that one may logically infer that the same person committed both crimes. Fifth, the probative value of other crimes evidence must outweigh its prejudicial effect.

ALLEGED CONFIDENTIALITY OF UNADJUDICATED DELINQUENT ACTS
Louisiana Children's Code Article 412A sets forth the state's statutory policy: except as otherwise provided in the article, all records and reports of the court, probation officers, and law enforcement agencies concerning matters or proceedings in court are confidential and shall not be disclosed. Among the exceptions to this statutory policy is the exception stated in Paragraph E(2) of the article, which provides as follows:
E. For good cause, the court may also order disclosure of records and reports of the court, probation officers, and law enforcement agencies to:
* * * * * *

*292 (2) Any person, agency, institution, or other court upon a particular showing that the information is relevant to a specific investigation or proceeding.
Article 123B of the Louisiana Code of Juvenile Procedure,[5] the source provision for LSA-Ch.C. art. 412E(2), contained identical language to that in Paragraph E(2). In Thibodeaux v. Judge, Juvenile Division of the Fourteenth Judicial District Court, 377 So.2d 508 (La.App. 3rd Cir.1979), a case decided under the provisions of Article 123B, the appellate court held that a trial court should have released the names of juveniles and their parents to the victim of a delinquent act allegedly committed by the juveniles, when the victim sought the information in order to commence a civil action for damages arising out of the alleged delinquent act. In reversing the lower court, the appellate court stated the following:
In exercising its discretion under this article, the court must make the decision as to which interest must prevail, the public policy of confidentiality of juvenile records, or the interest and need of the person seeking disclosure. The policy of the law is to preserve the anonymity of the juvenile offender. The adoption of Article 123B reflects, however, that this policy is not absolute but is subject to the rights of others. In this case, the alleged victim seeks the information in order that he may commence a civil action for damages arising out of the alleged juvenile conduct. In weighing the rights of and interests of the parties herein, we hold that the policy of confidentiality of juvenile records will not be unwarrantly impinged upon by the disclosure to the plaintiff the names of the juveniles and their parents. The plaintiff has shown good cause for his need for disclosure by showing that the requested `information is relevant to a specific ... proceeding.' For these reasons, the trial court judgment must be reversed.
377 So.2d at 510. See also State v. Toledano, 391 So.2d 817 (La.1980); on rehearing the court remanded the defendant's manslaughter conviction to the trial court for a determination of whether or not the impeachment value of any juvenile adjudications of a co-defendant, who testified against the defendant, outweighed the witness' statutory interest in the confidentiality of any such records.[6]
Herein, the record reflects that the state's evidence of other crimes related to other crimes (unadjudicated acts of delinquency) committed within a period of one month prior to the charged offense and not acts sought to be disclosed from defendant's juvenile record. Thus, the statutory provision (LSA-Ch.C. art. 412) making juvenile records and reports confidential and prohibiting their disclosure is inapplicable. Even were we to assume, arguendo, the applicability of the provision, the benefit of the other crimes evidence at issue in furthering the state's interest in the just prosecution of the crime clearly outweighs the state's competing interest in maintaining the confidentiality of the records and reports of acts of juvenile delinquency.

ALLEGED INADEQUACY OF THE STATE'S PRIEUR NOTICE
The State's Prieur notice recited, in pertinent part, the following:
The State intends to provide evidence of the systematic method of faking drug *293 sales and then robbing individuals in the Ardenwood area with guns being fired. Carr consistently terrorized the local community with this activity and his gunfire.
The evidence of prior robberies and terrorizing but [sic] is not limited to documentary evidence, prior observations, and prior systematic actions by the defendant.
The State files this Notice only out of an abundance of caution. This evidence is admissible under the independent basis of proof of the material element at issue of system and intent and absence of mistake in the incident at issue in this principle [sic] case.
During the Prieur hearing, defense counsel objected to the state's Prieur notice on the basis that it was vague, indefinite, and not in conformity to the requirements of State v. Prieur. The record reflects that, in response, the prosecutor moved to orally amend the notice apparently to conform to the prosecutor's Prieur hearing testimony "to more fully divulge all the factors that he intends to introduce." The record further reflects that the district court, without any objection by defendant, granted the motion. At the conclusion of the hearing, the prosecutor made known to the court that the state's purpose in introducing the other crimes evidence was to show system and prove defendant's identity. Under these circumstances, we find that defendant waived any objection to any inadequacies in the written notice and that any inadequacies in the notice were cured by the state's oral amendment.

ALLEGED FAILURE TO PROVE OTHER CRIMES BY CLEAR AND CONVINCING EVIDENCE
In the defendant's final assignment of error he alleges that the state failed to prove by clear and convincing evidence that the defendant was the one who committed the other crimes sought to be introduced. He argues that the evidence presented was hearsay and that it was vague and indefinite. He also asserts that his testimony was sufficient to refute the state's proof.
LSA-C.E. art. 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The prosecutor testified that the three prior crimes and the charged offense occurred within a one month period at the same location. In each instance, defendant used a gun to terrorize and rob his victims, transient individuals, of money. Additionally, the prosecutor's testimony showed that in committing at least two of the prior offenses[7] and the charged offense, defendant utilized the subterfuge of a fictitious illegal drug transaction to rob his victims.
Initially we find that under LSA-C.E. 104 and LSA-C.E. art 1103 hearsay testimony is permissible to establish by clear and convincing evidence that the defendant committed the other crime(s). State v. Tucker, 604 So.2d 1320 (La.1992).[8] We further find that the testimony was not vague or indefinite nor was the testimony of defense *294 counsel sufficient to refute the evidence submitted by the state. Therefore, the district court properly considered the testimony of the Assistant District Attorney in the instant matter and we find that the testimony constituted clear and convincing evidence that defendant committed the other crimes.
We further note that the defendant does not contend that his identity as perpetrator of the charged offense will not be a genuine disputed issue at trial; thus, he apparently concedes that his identity will be genuinely at issue. Where identity is genuinely at issue, system evidence has relevance independent of defendant's criminal propensity and is admissible when, as herein, it meets the other requirements for admissibility of other crimes evidence. Furthermore, the modus operandi of the crimes herein is so peculiarly distinctive to that used in committing the charged offense as to make them signature crimes. Finally, after considering the degree of similarity of the offenses, which enhances the evidence's probative value, and balancing the probative value of the other crimes evidence with its prejudicial effect, we conclude that the probative value clearly outweighs the prejudicial effect of the evidence. See State v. Ester, 436 So.2d 543, 546 (La.1983). Consequently, the other crimes evidence is admissible at trial to prove defendant's identity. Compare State v. Davis, 449 So.2d 466 (La.1984); State v. Moore, 440 So.2d 134. Accordingly, the district court correctly granted the State's motion to introduce the other crimes evidence at defendant's trial.
WRIT DENIAL REAFFIRMED.
NOTES
[1] The record reflects that defendant was a juvenile at the time of the commission of the charged offense.
[2] Mr. Brooks testified that Donald Davis and Davis' wife, Sheronda, saw this incident.
[3] According to Mr. Brooks, Cassandra Heard saw this incident; Ms. Heard's account was confirmed by Rita Selders.
[4] Mr. Brooks testified that he "believe[d]" that this incident was seen by the Davises and Heard.
[5] LSA-C.J.P. art 123B was enacted by Act 504 of 1979, and it was subsequently repealed by Act 235 of 1991, which enacted the Louisiana Children's Code.
[6] In remanding the case, the Louisiana Supreme Court stated the following:

When defense counsel moved for production of the rap sheet for purposes of crossexamining the prosecution's chief witness, a juvenile who had been charged with murder and had been allowed to plead guilty to a lesser offense, the trial judge was faced with a choice between protecting the confidentiality of any prior juvenile proceedings against this witness and protecting defendant's right to confront the witnesses against him. The extreme importance and constitutional status of the right to confrontation (which includes the reasonable opportunity to impeach the witness' credibility) requires that any statutory right to confidentiality of juvenile proceedings under these circumstances must yield if the discrediting value of a prior juvenile adjudication is such that its disclosure is essential to a fair trial. [footnotes omitted]
391 So.2d at 820.
[7] As previously noted in this opinion, the prosecutor testified, in regard to the second of the prior crimes, that he did not know the purpose for which the victim in that incident had gone to the Ardenwood Project; and, more specifically, the prosecutor stated that he did not know if this victim was seeking cocaine.
[8] Although the Court in Tucker, 604 So.2d 1320 denied defendant's writ application because the result was correct the Court specifically disapproved of this court's finding, on appeal, 602 So.2d 59 (La.App. 1st Cir.1992), that hearsay testimony was improperly admitted to prove that the defendant committed other crimes. The Court stated that this reasoning is not supported by Louisiana evidence law and pointed out that LSA-C.E. art 104(A) allows trial courts to consider hearsay in their pretrial hearings on matters of admissibility.